UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS BILLARD, derivatively and on behalf of LIQUIDITY SERVICES, INC., | |
| Plaintiff, | Civil Action No. 16-1612(BAH) |
| v. | Chief Judge Beryl A. Howell |
| WILLIAM P. ANGRICK, III *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

The plaintiff Thomas Billard, a shareholder of Liquidity Services, Inc. ("LSI"), has filed this derivative action, on behalf of LSI, against ten current and former LSI board members and officers, asserting claims of breach of fiduciary duty, waste of corporate assets, and unjust enrichment.[1] The defendants moved to dismiss this action on *forum non conveniens* grounds, citing LSI's forum-selection bylaw, *see generally* Defs.' Mot. Dismiss for *Forum Non Conveniens* Based on Liquidity Services Inc.'s Forum Selection Bylaw ("Defs.' Mot. Dismiss"), ECF No. 14, which specifies that "the sole and exclusive forum" for any claim by a stockholder that is "based upon a violation of a duty by a current or former director [or] officer" "shall be the Court of Chancery of the State of Delaware." Defs.' Mot. Dismiss, Declaration of LSI Counsel Miranda S. Schiller ("Schiller Decl."), Ex. 3.2 to Ex. G ("LSI Bylaws") ¶ 7.1, ECF No. 14-8. For the reasons explained below, the defendants' motion to dismiss on *forum non conveniens* grounds is granted.

---

[1] Also pending before this Court are another shareholder's derivative action against various LSI directors and officers, *see Slingerland v. Angrick*, No. 16-cv-1725 (filed Aug. 25, 2016), as well as a federal securities action against LSI, *see Howard v. Liquidity Servs., Inc.*, No. 14-1183 (filed July 14, 2014).

1

I.      BACKGROUND

The plaintiff, a shareholder of LSI, brings this derivative action on behalf of LSI, pursuant to Federal Rule of Civil Procedure 23.1,[2] against ten current and former LSI directors and officers asserting claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment.[3]  Compl. ¶¶ 1, 23, ECF No. 1.  Shortly after the filing of the complaint, the parties filed a stipulation, indicating the defendants' belief that the plaintiff was "required" to file this action in the Delaware Court of Chancery and that the parties agreed that "the interest of efficiency and judicial economy would be served by allowing the parties to brief the issue of *forum non conveniens* before any pleading-based grounds for dismissal."  Stipulation and Proposed Order at 1–2, ECF No. 5.  The Court agreed, *see generally* Order (dated Aug. 24, 2016), ECF No. 6, and the parties have briefed the *forum non conveniens* issue.  Although resolution of the pending motion turns on the effect of LSI's forum-selection bylaw, the factual allegations underlying the plaintiff's claims are briefly set out to provide context before explaining the timeline of events resulting in LSI's adoption of a forum-selection bylaw, since this timeline features prominently in the parties' briefing.

---

[2]     Rule 23.1 "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).

[3]     The ten defendants are: William P. Angrick, III, the co-founder of LSI, and CEO and Chairman of the Board since 2000, *id.* ¶ 25; Jaime Mateus-Tique, co-founder of LSI, and President, COO, and Director from 2000 to 2009, when he retired but remained a member of the Board, *id.* ¶ 26; Phillip A. Clough, a Board member since 2004, who serves on the Board's Compensation Committee, *id.* ¶ 27; Patrick W. Gross, a Board member since 2001, who serves on the Board's Audit and Corporate Governance and Nominating Committees, *id.* ¶ 28; Beatriz Infante, a board member since 2014, who serves on the Board's Audit Committee and as Chair of the Compensation Committee, *id.* ¶ 29; George H. Ellis, a Board member since 2010 who serves as Chair of the Audit Committee, *id.* ¶ 30; Edward J. Kolodzieski, a Board member since 2015 who serves on the Board's Compensation and Corporate Governance and Auditing Committees, *id.* ¶ 31; Franklin D. Kramer, who resigned in 2013 as a member of the Audit and Compensation Committees and as Chair of the Corporate Governance and Nominating Committee, *id.* ¶ 34; David A. Perdue, a Board member from 2009 through 2014, *id.* ¶ 35; and James M. Rallo, who served as LSI's CFO from 2005 to 2015, and who currently serves as President of the Retail Supply Chain Group, *id.* ¶ 38. The nominal defendant is LSI.  *Id.* ¶ 24.

### A. The Factual Allegations Underlying Plaintiff's Claims

Founded in 1999, LSI "provides online auction marketplaces for surplus and salvage assets, and derives its revenue from retaining a percentage of the proceeds from the sales." Compl. ¶ 67. In 2005, LSI obtained "the exclusive right to manage and sell all United States Department of Defense ('[DOD]') scrap property." *Id.* ¶ 3. "[T]he majority of [LSI's] revenue came from its [DOD] contracts." *Id.* Although the DOD contracts were lucrative, the contracts did not provide a guaranteed income stream because of "the competitive nature of the mandatory bidding process required under U.S. law." *Id.* ¶ 4. LSI recognized the need to diversify its business to decrease its dependence on the DOD revenue and adopted a two-part strategy for diversification. *Id.* ¶¶ 4–5, 8. First, LSI endeavored to expand into the retail and capital supply markets and, second, LSI began acquiring competitors. *Id.* The company referred to these strategies as the "organic" and "inorganic" growth strategies respectively. *Id.* ¶ 68. The company repeatedly touted its success on these fronts notwithstanding evidence to the contrary. *Id.* ¶¶ 5–7.

When these strategies failed, LSI "began to manipulate sales numbers while revenues and margins declined through 2013 and 2014." *Id.* ¶ 9. "[T]he Company [also] began issuing . . . statements [that] conceal[ed] the operational problems."[4] *Id.* While the defendants allegedly concealed LSI's troubles and thereby "artificially inflated" the company's stock price, Mssrs. Angrick, Rallo, Tique, Gross, Ellis, and Kramer collectively sold "more than $106 million worth of [LSI] stock," often in the days following a press release reporting the company's growth, which caused a spike in stock prices. *Id.* ¶¶ 105–06. For example, during the relevant period,

---

[4] The "Pertinent Period" ran from the issuance of the first of those allegedly misleading statements, on February 1, 2012, through the date of the first corrective statement, which was issued on May 8, 2014. *Id.* ¶¶ 1, 104.

Mr. Angrick "sold 1,642,979 shares, approximately 25% of his holdings—and reaped . . . proceeds of $68.2 million." *Id.* ¶ 104.

On May 8, 2014, LSI issued a press release finally revealing to the public what the defendants had allegedly known but failed to disclose for some time: "that [LSI] had suffered 'unforeseen' losses and [would be] forced to drastically reduce its guidance for the remainder of the fiscal year 2014." *Id.* ¶¶ 12, 14. The day of the press release, LSI's share price declined 30%, from $17.31 per share on May 7 to $12.17 on May 8, 2014. *Id.* ¶ 13.

### B.  LSI's Adoption of a Forum-Selection Bylaw

On December 18, 2014, the plaintiff made a books and records demand under 8 Del. C. § 220, which permits shareholders of a Delaware corporation to inspect a company's records. *See* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 4, ECF No. 4. After the parties entered into a confidentiality agreement concerning the materials that would be disclosed pursuant to the plaintiff's demand, LSI produced responsive records. *Id.* More than a year later, on August 2, 2016, at 10:12 A.M., the plaintiff's attorney emailed LSI's attorney a copy of a ready-to-file complaint so that the parties could "resolve any confidentiality issues in advance of filing as contemplated by the parties' confidentiality agreement." *Id.* at 5.

That same day, LSI held its third-quarter board meeting. *See* Schiller Decl. ¶ 7. Several days before the meeting, on July 27, 2016, LSI's directors were sent, via email, a Board Book providing an overview of what would be discussed at the meeting. *Id.* The Board Book's table of contents lists "Exclusive Forum Bylaws" as a topic for discussion. Schiller Decl., Ex. C ("Board Book") at 2, ECF No. 14-4. On August 2—the same day on which the plaintiff send LSI a copy of his complaint—LSI's Board convened from 8:30 A.M. to 4:00 P.M. and, among other things, adopted a forum-selection bylaw, which provides that the Delaware Court of

Chancery is the "sole and exclusive forum" for litigating certain claims against LSI's officers and directors. Schiller Decl. ¶ 10; *see also* Schiller Decl., Ex. E ("Board Meeting Minutes") at 1, ECF No. 14-6. On August 4, 2016, LSI filed a Form 10-Q with the Securities and Exchange Commission, disclosing that LSI had adopted the forum-selection bylaw. Schiller Decl. ¶ 13. The following day, LSI's attorney notified the plaintiff's lawyer of LSI's forum-selection bylaw and requested that any complaint be filed in the Delaware Court of Chancery. Schiller Decl., Ex. H ("Defs.' Counsel Email to Pl.'s Counsel"), ECF No. 14-9. Notwithstanding the forum-selection bylaw, the plaintiff filed suit in this Court.

## II.     LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state . . . forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013).[5] The Supreme Court has articulated a two-step analysis for addressing a defendant's *forum non conveniens* motion predicated on a forum-selection clause. *See id.* at 581–82. The threshold question is whether the forum-selection clause is valid. *See id.* at 581 & n.5. Under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), forum-selection clauses are presumptively valid and enforceable unless the party opposing enforcement makes a "strong showing," *id.* at 15, or meets a "heavy burden of proof," *id.* at 17, that (1) "enforcement would be unreasonable and unjust;" (2) "the clause was invalid for such reasons as fraud or overreaching;" (3) "enforcement would contravene a strong public

---

[5] In *Atlantic Marine*, the Supreme Court rejected the conclusion by the court of appeals below that "a forum-selection clause pointing to a nonfederal forum should be enforced through [Federal Rule of Civil Procedure] 12(b)(3)." *Id.* at 579. The Court held that a forum-selection clause pointing to a *federal* forum should be enforced via 28 U.S.C. § 1404(a). *Id.* at 580. That statute does not apply, however, to forum-selection clauses identifying a state forum, and such clauses should be enforced, as here, through a *forum non conveniens* motion. *See id.*; *accord Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, No. 12-1901, 2016 WL 3014616, at *2 (D.D.C. May 24, 2016) (treating a motion to dismiss predicated on a forum-selection clause pointing to a state court as a "*forum non conveniens* motion" pursuant to *Atlantic Marine*).

policy of the forum in which suit is brought, whether declared by statute or judicial decision;" or (4) "trial in the contractual forum would be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court," *id.* at 15. *See also Marra v. Papandreou*, 216 F.3d 1119, 1124 (D.C. Cir. 2000) (citing *Bremen* and explaining that the plaintiff had not "point[ed] to factors typically relied on by litigants seeking to avoid enforcement of forum-selection clauses—for instance, that the clause is the product of fraud or that its enforcement would contravene a strong public policy of the forum in which suit is brought"); *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 118 (D.D.C. 2008) (citing the four *Bremen* factors).

If the forum-selection clause is valid, the second step of the analysis is to consider whether public interest factors "overwhelmingly disfavor" dismissal. *Atl. Marine*, 134 S. Ct. at 583. Such factors include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal alteration omitted)). Public interest factors, however, will "rarely" defeat a *forum non conveniens* motion predicated on a valid forum-selection clause because "[i]n all but the most unusual cases, . . . the interest of justice is served by holding parties to their bargain." *Id.* at 583 (internal quotation marks omitted).

## III.   DISCUSSION

The defendants, relying on LSI's forum-selection bylaw, seek dismissal of the plaintiff's complaint, without prejudice, so that the plaintiff may refile his complaint in the Delaware Court of Chancery. As the party resisting enforcement of the bylaw, the plaintiff bears the burden of establishing that dismissal is unwarranted. *Id.* at 581. The plaintiff hangs his hat on the first step

of the *Atlantic Marine* analysis, arguing that the bylaw is invalid because it is unreasonable and contrary to public policy. He does not address *Atlantic Marine*'s second inquiry, that is, whether the public interest factors militate so strongly against dismissal that they override an otherwise valid forum-selection clause. *Atlantic Marine*'s two-step analysis is addressed below.

### A. Validity of LSI's Forum-Selection Bylaw

The parties agree that LSI's forum-selection bylaw is facially valid but dispute whether the bylaw is unenforceable as applied to the plaintiff.[6] *See* Defs.' Mot. Dismiss at 7–9; Pl.'s Opp'n at 8. The plaintiff points to two factors identified by the Supreme Court in *Bremen* in arguing that the forum-selection bylaw is invalid and unenforceable: first, that enforcement is unreasonable and unjust, and, second, that enforcement is contrary to the District of Columbia's public policy. *See* Pl.'s Opp'n at 11–16. As discussed below, these two arguments are unavailing.

#### 1. Reasonableness

In the plaintiff's view, enforcement of the forum-selection bylaw against him would be "unreasonable and unjust" for three reasons. First, he posits that enforcement would contravene the purposes of the bylaw, *see* Pl.'s Opp'n at 11, noting that the first recital in the LSI Board's resolution approving the bylaw references "an increased prevalence of multi-forum litigation . . . resulting in increased costs of litigation for corporations and their stockholders."[7] Board Meeting Minutes at 2. In light of *Howard v. Liquidity Services*, the shareholder class action against LSI pending before this Court, the plaintiff argues that dismissing his claims on *forum*

---

[6] The bylaw is facially valid under Delaware law because LSI's Certificate of Incorporation authorizes the LSI Board to unilaterally amend LSI's bylaws. *See Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 958 (Del. Ch. 2013) ("Where, as here, the certificate of incorporation has conferred on the board the power to adopt bylaws, and the board has adopted a bylaw consistent with 8 Del. C. § 109(b), the stockholders have assented to that new bylaw being contractually binding."). The plaintiff does not dispute this conclusion.

[7] The portion of the recital that the plaintiff omits states that the bylaw is also intended to guard against "forum shopping by plaintiffs." Board Meeting Minutes at 2.

*non conveniens* grounds would "result in two separate proceedings before two different courts," thereby "risk[ing] inconsistent and conflicting determinations based on the same set of facts." Pl.'s Opp'n at 12.

      The plaintiff misconstrues the purposes of the bylaw. The bylaw and its recitals pertain only to certain types of claims—*i.e.*, "claims in the right of the Corporation[] (a) that are based upon a violation of a duty by a current or former director, officer, employee or stockholder in such capacity; or (b) as to which the General Corporation Law of the State of Delaware confers jurisdiction upon the Court of Chancery." LSI Bylaws ¶ 7.1. The bylaw does not apply, for example, to federal securities class actions against the company because such actions are litigated in federal court. *See id.* The recital stating that the bylaw was intended to minimize multi-forum litigation thus reflects the company's decision to channel the types of actions covered by the bylaw—most relevantly, derivative actions like this one—into the Delaware Court of Chancery, without regard to the venue in which any other claims not covered by the bylaw might be pending. By overlooking the targeted nature of the bylaw, the plaintiff also ignores other recitals focused on derivative actions that militate strongly in favor of dismissal. For example, the second and third recitals state that "an increasing number of cases against Delaware corporations are filed outside of Delaware" and "the Board . . . believes that Delaware courts have, and are widely considered to have, significant expertise in resolving disputes involving internal corporate claims." Board Meeting Minutes at 2. No matter the merits of this view, the recitals indicate that the company plainly intended that derivative actions would proceed in a single forum, and that forum would be the Delaware Court of Chancery. Accordingly, dismissal of this action without prejudice would not contravene the purposes of the

bylaw, and the plaintiff has not made a "strong showing" that enforcement of the bylaw would be unreasonable and unjust on that basis.

Second, the plaintiff contends that the timing of the bylaw's adoption makes enforcement unreasonable and unjust. *See* Pl.'s Opp'n at 12. In particular, the plaintiff argues that because the bylaw was adopted the same day his attorney sent LSI's attorney a copy of the plaintiff's complaint, "the bylaw may very well have been adopted after [LSI] received notice of [the plaintiff's] forthcoming suit." *Id.* The plaintiff therefore infers a causal relationship between his complaint and the Board's adoption of the forum-selection bylaw. Critically, however, the plaintiff does not dispute that the forum-selection bylaw was on LSI's Board meeting agenda at least as of July 27, 2016, several days before the plaintiff's counsel sent LSI's counsel a copy of the plaintiff's complaint, thereby undermining the plaintiff's alleged chain of causation. *See* Board Book at 2. Further bolstering the conclusion that the plaintiff's complaint did not spur LSI's Board to action is the fact that LSI's attorney had not heard from the plaintiff's attorney in the year before the plaintiff's attorney sent a copy of the complaint on August 2, 2016. *See* Schiller Decl. ¶¶ 5, 11. This timeline of events simply does not establish the causation urged by the plaintiff, and, accordingly, he cannot make the requisite "strong showing" that it would be unreasonable and unjust to enforce the bylaw against him.

Finally, the plaintiff argues that enforcement of the bylaw would be unreasonable because "there is an inherent and insurmountable conflict of interest between the individual directors' duty to further [LSI's] interest and their own personal interest in raising unnecessary roadblocks to suits which name them personally as defendants." Pl.'s Opp'n at 13. According to the plaintiff, proceeding in this Court would "further [LSI's] interests and be consistent with the purposes of the forum selection bylaw," *id.*, and that "no interest of [LSI] is served by enforcing

9

the forum selection bylaw," *id.* at 14. This is, in essence, a rehashing of the plaintiff's earlier argument that proceeding in Delaware would contravene the bylaw's aim of reducing multi-forum litigation. *Id.* As noted above, this argument is unavailing because the reasonable conclusion to be drawn from the recitals is that the company intended that certain types of actions, namely derivative actions, be brought in the Delaware Court of Chancery. The plaintiff has not demonstrated that the company would indeed be better off litigating in this Court, let alone that proceeding in Delaware would be unreasonable and unjust.

### 2. Public Policy

The plaintiff also contends, relying on the *Bremen* Court's instruction that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," *Bremen*, 407 U.S. at 15, that enforcement of the forum-selection bylaw would contravene "strong public policies in the District of Columbia," Pl.'s Opp'n at 14. The plaintiff's reliance on this aspect of *Bremen* is misplaced. The thrust of the Supreme Court's direction in *Bremen* was that a forum-selection clause may be unenforceable when the jurisdiction where the suit was filed has an important public policy, which is either not recognized or significantly undermined by the law where the defendant seeks to litigate the case.

A closer look at *Bremen* is instructive. There, the defendant had won a bid to transport one of the plaintiff's ships from Louisiana to Italy. *Id.* at 3. The dispute arose when the ship was damaged during transfer. The parties' agreement contained a forum-selection clause, specifying that "[a]ny dispute arising must be treated before the London Court of Justice." *Id.* at 2 (internal quotation marks omitted). The agreement also "contained two clauses purporting to exculpate [the defendant] from liability for damages to the towed barge." *Id.* The Fifth Circuit had

10

affirmed the district court's refusal to enforce the forum-selection clause on the ground that "enforcement would be contrary to the public policy of the forum under *Bisso v. Inland Waterways Corp.*, 349 U.S. 85 (1955), because of the prospect that the English courts would enforce the clauses of the towage contract purporting to exculpate [the defendant] from liability for damages to the [ship]." *Id.* at 15.

The Supreme Court's statement that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought," *id.*, was made in direct response to the Fifth Circuit's rationale for rejecting the forum-selection clause, *i.e.*, that the parties' exculpation clause would be enforced in England but not in the United States.[8] Thus, it is clear from the Court's analysis that, to prevail on a public policy argument, a party resisting enforcement of a forum-selection clause must engage in a comparative analysis, showing that a public policy of the selected forum is different from, and contravened by, the law of the alternative forum. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) ("To show that enforcement of a forum selection clause would contravene a strong public policy of the forum in which suit is brought, however, it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States." (internal quotation marks omitted)); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1231 (6th Cir. 1995) (addressing the argument that enforcement of the forum-selection clause would contravene Ohio public policy and explaining that "[g]iven the international nature of the transactions involved here, and the availability of remedies under British law that do not offend the policies behind the securities laws, the parties' forum selection and choice of law provisions contained in the agreements should be given effect" (internal quotation marks omitted)); *Rogers,*

---

[8] Ultimately, the Court concluded that *Bisso* did not reach the facts of *Bremen* and therefore rejected the plaintiff's public policy argument. *See id.* at 15–16.

11

*Lynch & Assoc. LLC. v. Riskfactor Solutions, Ltd.*, No. 03-1399, 2004 WL 385064, at *6 (E.D. La. Mar. 1, 2004) ("[The] plaintiff's remedies in England were adequate to protect the interests behind the statutes at issue. '[P]ublic policy' arguments will not easily transcend the high hurdle facing the opponent of a forum selection clause even if there is a state policy that is implicated by the enforcement of the clause." (internal quotation marks and citation omitted)).

Here, the plaintiff states that enforcement of the forum-selection bylaw would undermine the District of Columbia's public policy in favor of litigating related claims together, and in a timely manner, as well as the policy favoring amicable resolution of disputes. *See* Pl.'s Opp'n at 15. These policies are reflected in myriad cases from federal and local courts in the District of Columbia, but the plaintiff cites no caselaw from the Delaware Court of Chancery showing that these policies are eschewed in that forum, as required by *Bremen*. Thus, the plaintiff's public policy arguments, made without any reference to the law in the Delaware Court of Chancery, are insufficient to prevent dismissal.

In any event, the plaintiff cannot show that dismissal would in fact undermine the public policies he cites. As for judicial economy concerns, the plaintiff himself concedes that *Howard v. Liquidity Services* and this case differ in important respects. Pl.'s Opp'n at 3. Whereas "[t]his case seeks recovery for the Company's injuries," *Howard v. Liquidity Services* involves an effort "to recover for injuries to a class of shareholders who purchased their shares during a particular class period." *Id.* Moreover, as the defendants point out, other derivative actions against LSI's directors and officers based on the events underlying this suit, if such actions arise, will presumably be litigated in the Delaware Court of Chancery, pursuant to the forum-selection bylaw. *See* Defs.' Reply at 3–4 & n.3; *id.* at 7 (citing advertisements by other law firms seeking "a stockholder plaintiff to bring actions similar to this one"). Judicial economy considerations

12

thus appear to *favor* dismissal so that derivative actions asserting state law claims against LSI's directors and officers will be tried in the same forum. *See Butorin v. Blount*, 106 F. Supp. 3d 833, 843 (S.D. Tex. 2015) (enforcing a Delaware forum-selection clause and explaining that although not *all* cases involving the corporation will fall within a forum-selection clause, "[t]he point of the Forum Selection Bylaw is to consolidate as many cases as possible in Delaware").

As for the argument that this Court would resolve the plaintiff's claims more quickly than the Delaware Court of Chancery, this Court may be more familiar than the Delaware Court of Chancery with the underlying allegations, but the plaintiff ignores the fact that the Delaware Court of Chancery specializes in Delaware law, which would govern the instant claims. The plaintiff also does not address how any other considerations, such as relative court congestion, would bear on how quickly this case could be resolved in Delaware versus this Court. The plaintiff's conclusory assertion that expeditious litigation is an important policy and that litigation would proceed more quickly in this Court thus rings hollow.

The plaintiff's assertion that enforcement of the bylaw would contravene the District of Columbia's public policy favoring amicable resolution of disputes is equally baseless. He contends that enforcing the bylaw "punishes [him] for entering into the confidentiality agreement with [LSI] because the complaint would have been filed the same day as the forum-selection bylaw was adopted or even earlier were it not for the provisions of the confidentiality agreement which first required him to seek the Company's position about filing under seal." Pl.'s Opp'n at 15–16. This argument, based on pure speculation about what would have occurred absent a confidentiality agreement, ignores the fact that the plaintiff sat on documents produced by LSI for a year before sending a copy of his complaint. *See* Schiller Decl. ¶¶ 5, 11. This chronology

undercuts the plaintiff's effort to blame the confidentiality agreement for the plaintiff's filing of his complaint on August 8, 2016, six days after LSI's adoption of the forum-selection bylaw.

In sum, then, the plaintiff has not made the requisite strong showing that public policy considerations override the otherwise valid forum-selection bylaw because the plaintiff has not shown that any District of Columbia policies will be undermined by litigating this case in the Delaware Court of Chancery, and the plaintiff's arguments about judicial economy and the interest in private resolution of disputes are simply not persuasive.

### B. Public Interest Factors

Having determined that the forum-selection bylaw is valid and enforceable, the next question is whether the public interest factors identified in *Atlantic Marine* warrant dismissal. *See Atl. Marine*, 134 S. Ct. at 581 n.6, 582. Critically, the plaintiff does not address any of the three *Atlantic Marine* factors, *i.e.*, (1) whether court congestion is worse in this Court or in the Delaware Court of Chancery; (2) whether the dispute is so localized that there is a local interest in the case; and (3) which court is more "at home" with the law to be applied. *Id.* The plaintiff likewise does not explicitly reference any other public interest factors that might bear on the instant motion to dismiss. He cannot meet his burden of establishing that dismissal is unwarranted without expressly addressing the public interest factors. *See Atl. Marine*, 134 S. Ct. at 581.[9]

---

[9] In addressing *Atlantic Marine*'s first prong—whether the forum-selection bylaw is valid—the plaintiff asserts that enforcement of the bylaw would be unreasonable because *Howard* is already underway in this Court. Even were the plaintiff's arguments in support of finding the forum-selection bylaw invalid applied to the second step of the *Atlantic Marine* analysis, he still would fall far short of showing that the public interest factors "overwhelming disfavor" dismissal. *Id.* at 583. There may be some inefficiencies associated with dismissing the plaintiff's complaint so that he can refile in the Delaware Court of Chancery given that this Court is already familiar with the events underlying the plaintiff's suit. *See Cucci v. Edwards*, No. SACV 07532 PSG (MLGX), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (acknowledging "common issues in the Securities Class Action and Shareholder Derivative Action" premised on the same press releases, SEC filings, and analyst reports). Nevertheless, there are also potential efficiency gains associated with dismissal, given that other derivative actions against LSI's officers and directors should, in theory, be filed in the Delaware Court of Chancery. Accordingly,

The defendants address all three factors referenced in *Atlantic Marine* and argue that each factor favors dismissal. *See* Defs.' Mot. Dismiss at 14–15; Defs.' Reply at 9–10. The defendants note that "the Delaware Court of Chancery is the preeminent expert in Delaware law, especially derivative claims," that "the Court of Chancery, as a court of limited jurisdiction in a small state, may be less congested" than this Court, and that "the derivative claims . . . asserted here . . . have virtually nothing to do with the District of Columbia and everything to do with Delaware." Defs.' Mot. Dismiss at 15 (noting, *inter alia*, that litigating the plaintiff's state law claims in the Delaware Court of Chancery will "permit the highest court of Delaware to pronounce the law, rather than the federal courts being asked to predict such rulings under *Erie Railroad Co. v. Tompkins*"); *accord* Defs.' Reply at 9. This assessment of the public interest factors appears correct, but regardless, the plaintiff's silence on the public interest factors is patently insufficient to satisfy his burden of showing that, on balance, the public interest factors "*overwhelmingly disfavor*" dismissal. *Atl. Marine*, 134 S. Ct. at 583 (emphasis added); *accord Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 782 (S.D. Tex. 2014) ("[U]nder *Atlantic Marine*, the party *resisting* enforcement has the burden of showing that public-interest factors 'overwhelmingly disfavor' dismissal. Because [the plaintiff] has made no showing that public-interest factors disfavor dismissal, it has not met its burden under *Atlantic Marine*. This is not an 'unusual case,' and the forum-selection clause should control." (emphasis in original) (citation omitted)), *aff'd*, 648 Fed. App'x 398 (5th Cir. 2016) (unpublished).

---

judicial economy concerns cut both ways and do not prevent dismissal based on an otherwise valid forum-selection bylaw. *See Butorin*, 106 F. Supp. 3d at 843 ("[T]he court does not believe that the [forum-selection] clause is unreasonable as applied simply because there is currently another case pending in this court. The point of the Forum Selection Bylaw is to consolidate as many cases as possible in Delaware.").

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss without prejudice, pursuant to the doctrine of *forum non conveniens*, is granted. An appropriate Order accompanies this Memorandum Opinion.

Date:  December 15, 2016

_____
BERYL A. HOWELL
Chief Judge